```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
YUKI IWAMURA,                            :
                                         :
                     Plaintiff,          :
                                         :      23cv9557 (DLC)
              -v-                         :
                                         :      OPINION AND
                                         :         ORDER
INDEPENDENT DIGITAL NEWS AND MEDIA,      :
LLC, and GRAEME MASSIE,                  :
                                         :
                     Defendants.         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Yuki Iwamura:

James H. Freeman
Craig B. Sanders
Sanders Law Group
333 Earle Ovington Boulevard
Suite 402
Uniondale, New York 11553

For defendants Independent Digital News and Media, LLC and
Graeme Massie:

John M. Griem, Jr.
Jodutt Marwan Basrawi
Carter Ledyard & Milburn LLP
28 Liberty Street, 41st Fl.
New York, New York 10005

DENISE COTE, District Judge:

Defendants Independent Digital News and Media, LLC ("IDNM") and Graeme Massie ("Massie") have moved to dismiss the amended complaint in this copyright action.  For the following reasons, the motion is denied.

## BACKGROUND

The following facts are taken from the amended complaint and documents integral to that pleading.  They are assumed to be true for purposes of deciding the pending motion.

Plaintiff, a professional videographer, created a video of supporters of President Trump blocking the Mario Cuomo bridge in New York City on November 1, 2020 (the "Video").  Plaintiff first published the Video on November 1 for the purpose of public distribution by licensing it to FNTV, LLC, which operates FreedomNews.TV.  FNTV posted the Video on Twitter, nka X. Plaintiff registered the Video with the United States Copyright Office on November 6, 2020.

IDNM operates a website and published a news story on November 1 written by Massie entitled "Trump MAGA vehicle parade shuts down Mario Cuomo bridge in New York".  The story embedded the Twitter post, which linked to the full Video, and included a still frame taken from the Video.  The embedded Twitter post identified plaintiff Yuki Iwamura and FreedomNews.TV as the source of the Video, and the story identified FreedomNews.TV as the source of the still frame.

Twitter's Terms of Service ("TOS") include the following:

> By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to copy . . . display and distribute such

Content in any and all media or distribution methods now known or later developed . . . <u>This license authorizes us to make your Content available to the rest of the world and to let others do the same.</u> You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by Twitter, or other companies, organizations or individuals, is made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services as the use of the Services by you is hereby agreed as being sufficient compensation for the Content and grant of rights herein.

(Emphasis added.)

Plaintiff filed this action on October 31, 2023, and in response to an initial motion to dismiss, filed an amended complaint on March 18, 2024. On April 1, defendants renewed their motion to dismiss the action. That motion was fully submitted on April 29, 2024. Plaintiff filed notices of supplemental authority on May 9, 2024, January 6, 2025, and October 14, 2025. Defendants responded to each filing. Of most significance to this motion, plaintiff relies on the September 29, 2025 decision by the Honorable John Cronan in <u>Lynk Media, LLC v. Independent Digital News and Media, LLC</u>, No. 24 Civ. 583 (JPC), 2025 WL 2771625 (S.D.N.Y. Sept. 29, 2025). On December 5, 2025, this action was transferred to this Court.

3

## DISCUSSION

Defendants seek dismissal on two grounds, both of which they assert as affirmative defenses to this action. Relying on Twitter's TOS, they contend they were licensed to publish the Video and still image. They also assert a fair use defense.

A defendant may raise, and the court may consider, an affirmative defense in a pre-Answer Rule 12(b)(6) motion "if the defense appears on the face of the complaint." Michael Grecco Prods., Inc. v. RADesign, Inc., 112 F.4th 144, 149 (2d Cir. 2024) (citation omitted). While fair use is typically resolved at summary judgment, the Second Circuit has acknowledged "the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim." TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016).

For purposes of this motion, defendants do not dispute that plaintiff has stated a claim for copyright infringement. The elements of such a claim are (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant. Spinelli v. NFL, 903 F.3d 185, 197 (2d Cir. 2018). Defendants do not dispute plaintiff's ownership of the copyright or that they published the video. They do contend that they were entitled to do so for two reasons.

4

I.    Licensee

Defendants contend that Twitter's TOS granted Twitter a non-exclusive, royalty-free license to display posted material, as well as the right to sublicense the material to its users.[1] In pertinent part, the TOS provide that "[t]his license authorizes us to make your Content available to the rest of the world and to let others do the same."  The license is defined to include the right for Twitter to make the Content available to "other companies" for "publication of such Content on other media and services, subject to our terms."  Emphasizing these TOS provisions, defendants contend that they received a sublicense to plaintiff's work because plaintiff, through his licensee, posted the Video on Twitter.  This argument overreads the TOS.

A license to use a copyrighted work "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." Spinelli, 903 F.3d at 197 (citation omitted).  A copyright

---

[1] The Court will take judicial notice of the TOS for the limited purpose of resolving the motion to dismiss, given that they are publicly accessible and there is no dispute as to their authenticity.  See Force v. Facebook, Inc., 934 F.3d 53, 59 n.5 (2d Cir. 2019) (finding that Facebook's publicly available Terms of Service and Community Standards were subject to judicial notice).

5

licensee who has obtained the proper authorization from the licensor may issue a sublicense, which can shield the sublicensee from liability.  See id. at 203; 2 Patry on Copyright § 5:127 (2025).  Because the existence of a license or sublicense is an affirmative defense, the burden of establishing it is on the party asserting the defense.  Spinelli, 903 F.3d at 197.

Copyright owners may grant two types of licenses: exclusive and nonexclusive.  Although an exclusive license must be in writing, 17 U.S.C. § 204(a), a nonexclusive license may be established either expressly or by implication.  Graham v. Jones, 144 F.3d 229, 235 (2d Cir. 1996).  Courts find implied licenses under "narrow circumstances," SmithKline Beecham Consumer Healthcare, L.P., v. Watson Pharms., Inc., 211 F.3d 21, 25 (2d Cir. 2000) (citation omitted), and only when there is evidence of a "meeting of the minds between the parties to permit the particular usage at issue . . .." ABKCO Music, Inc. v. Sagan, 50 F.4th 309, 320 (2d Cir. 2022) (citation omitted). Here, defendants rely solely on the existence of an express, non-exclusive sublicense purportedly arising from Twitter's TOS. That argument fails.

The TOS do not expressly grant defendants a license to the Video.  As Judge Cronan recently explained in rejecting this

same argument, the TOS at most grant a license to Twitter -- not to third-party publishers -- unless and until Twitter affirmatively exercises its sublicensing authority.  Lynk Media, LLC, 2025 WL 2771625, at *11.  Defendants do not contend, nor does the amended complaint suggest, that Twitter ever exercised that authority by entering into a sublicensing agreement with defendants.  Absent any such agreement, defendants' express-license defense fails.

II.  Fair Use

The defendants next contend that their use of the embedded Video and still frame in their news story about the political action taken on November 1 to block traffic on a New York City bridge was fair use.  This argument also fails to win dismissal of this action.

Section 107 of the Copyright Act codifies the fair use doctrine and provides that:

> the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.  To determine whether the use of a work is a fair use, the following four nonexclusive factors must be considered:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for

nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id.  All four factors listed in § 107 "are to be explored, and the results weighed together, in light of the purposes of copyright."  Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 37 (2d Cir. 2021) (citation omitted). Although fair use may be decided on a motion to dismiss where the complaint itself establishes the defense, dismissal is appropriate only in the rare case where fair use is clear as a matter of law.  See TCA Television, 839 F.3d at 178.

The amended complaint does not clearly establish fair use. Under the first factor -- the purpose of the use -- courts "consider the extent to which the secondary work is 'transformative,' as well as whether it is commercial."  Warhol, 11 F.4th at 37.  To be transformative, the new work should add "something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Id. (citation omitted).  Here, defendants embedded the full Video and reproduced a still image from it in a news article about the events that unfolded on November 1, 2020 on the Mario Cuomo bridge.  As the amended complaint alleges, defendants' reasons for reproducing the Video were the same as plaintiff's

reason for creating it: "to document a then current and newsworthy event . . . for the objective of news reporting." Moreover, the nature of defendants' use was commercial, as the amended complaint alleges that their website is monetized through paid subscriptions and advertisements.  Thus, the purpose and character of defendants' use militate against a finding of fair use.

The remaining statutory factors likewise do not clearly favor defendants.  Under the second factor, which the Second Circuit has cautioned "rarely play[s] a significant role in the determination of a fair use dispute," Authors Guild v. Google, Inc., 804 F.3d 202, 220 (2d Cir. 2015), courts consider "whether the work is expressive or creative, with 'greater leeway being allowed to a claim of fair use where the work is factual or informational.'"  Hatchette Book Grp., Inc. v. Internet Archive, 115 F.4th 163, 187 (2d Cir. 2024) (quoting Blanch v. Koons, 467 F.3d 244, 256 (2d Cir. 2006)).  Here, the Video documents a real-world event, but the amended complaint asserts that it still reflects plaintiff's choices of "subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment."  Given these considerations, the second factor is neutral in the fair use determination.

Factor three, however, clearly favors plaintiff, as it is undisputed that defendants used the entirety of the Video by embedding it, and thus "cannot escape liability on the ground that it only took a small part of the protected work." Romanova v. Amilus Inc., 138 F.4th 104, 120 (2d Cir. 2025). Lastly, the amended complaint plausibly alleges market harm, including interference with plaintiff's ability "to license [the Video] to competing news organizations." Because the amended complaint does not clearly establish fair use, defendants' fair use defense cannot support dismissal under Fed. R. Civ. 12(b)(6).

## CONCLUSION

Defendants' April 1, 2024 motion to dismiss is denied.

Dated:    New York, New York
          January 12, 2026

_____
DENISE COTE
United States District Judge